

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103340 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | Cause No. 1422-CR03331 |
| | ) | |
| ANTHONY CURTIS, | ) | Honorable Margaret Mary Neill |
| | ) | |
| Appellant. | ) | Filed:  August 30, 2016 |

## I.    Introduction

Anthony Curtis, ("Defendant"), appeals the trial court's judgment entered upon a jury verdict finding him guilty of two counts of assault in the first degree, two counts of unlawful use of a weapon, and four counts of armed criminal action. Specifically, Defendant contends there is insufficient evidence to support his convictions with respect to Counts I and III (assault in the first degree of Ebony Washington and her sister Errianna Washington)[1] and Counts II and IV (the accompanying armed criminal action charges).[2] The Defendant does not appeal his conviction under Counts V-VIII. We affirm.

---

[1] Because the victims involved in this case are family members who share the same last name, we will refer to them by their first names for clarity and ease of reading.  No disrespect is intended.

[2] Under § 571.015, RSMo 2000, "[a]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action[.]"

## II.     Factual and Procedural Background

On January 29, 2012, at approximately 6:00 p.m., Ebony and Errianna Washington witnessed two groups fighting on the corner of 16th Street and Biddle Street with five to fifteen people involved. At the time, Ebony lived at 1550 Biddle Street, sharing a common porch with her great-grandmother, Mary Hubbard, and Errianna lived nearby at 1647 Cole Street. When the fight started, Ms. Hubbard was asleep, and Ebony went onto her porch to observe the fighting. Errianna was taking her trash out and went to check on her sister after she heard the commotion.

After Ebony called the police and the fight subsided, she walked to the street corner to talk to one of the participants. She and her sister observed a woman named Chiffon pacing nearby while talking on a cell phone. They watched Chiffon approach a black Dodge Magnum and speak to a person in the back passenger seat, whom the sisters later identified as the Defendant. At this point, Ebony and Errianna were standing together at the corner of 16th and Biddle and each testified that Chiffon pointed in their general direction, where others from the fight were standing.

Both sisters watched the car suddenly accelerate down 16th Street; turn right on Biddle, stop, and saw Defendant shooting a semiautomatic handgun in their direction. Ebony stated she was in the line of fire and ran toward her apartment but when she reached her door, she looked back and saw her sister standing frozen and Ebony screamed "my sister, my sister." Errianna testified she saw Defendant shooting at the crowd and froze but could hear her sister screaming at her to run. She stated that as she ran through the crowd toward her sister's porch, she could feel the dirt flying in her face from the shots hitting the ground around her. Both girls identified Defendant as the shooter. Errianna testified she saw Defendant shooting at another person

2

running side by side with her through the crowd and that if she had been a little taller she probably would have been hit by the gunfire.

Forensics revealed bullets had been shot through the windows and into the home of Mary Hubbard. Both sisters told the police that Defendant had shot at them and identified him from a photo lineup and at trial. The Defendant did not testify or present any evidence. At the close of the state's evidence and at the close of all the evidence, Defendant filed motions for judgment of acquittal, which the trial court denied. The jury found him guilty of all eight counts. The trial court sentenced Defendant to serve ten years on Counts I-IV, with the sentences to run concurrently.

### III.   Standard of Review

Our review of a trial court's denial of a motion for judgment of acquittal is limited to a determination of whether there is sufficient evidence from which a reasonable juror could have found the Defendant guilty beyond a reasonable doubt. *State v. Bowman*, 337 S.W.3d 679, 688 (Mo. banc 2011). In a bench trial, the court's findings of fact shall have the force and effect of the verdict of a jury. Missouri Supreme Court Rule 27.01(b) (2016). An appellate court gives great deference to the trier of fact and does not act "as a 'super juror' with veto powers." *State v. Wolfe*, 13 S.W.3d 248, 252 (Mo. banc 2000) (abrogated in part on other grounds by *Mitchell v. Kardesch*, 313 S.W.3d 667, 678-679 (Mo. banc 2010)).  When reviewing the sufficiency of evidence supporting a criminal conviction, this Court accepts as true all favorable evidence to the State and all favorable inferences that can be drawn from the evidence, and disregards all contrary evidence and inferences.  *Bowman*, 337 S.W.3d at 688.

There is no distinction between direct and circumstantial evidence, and therefore, a court should not overrule a fact-finder "simply because the case depended…upon circumstantial

proof." *State v. Mosby*, 341 S.W.3d 154, 156 (Mo. App. E.D. 2011). Missouri courts have long recognized that intent is most often inferred from the circumstances, and it is presumed that a person intends the natural and probable consequences of his acts. *State v. Mangum*, 390 S.W.3d 853, 859 (Mo. App. E.D. 2013). Additionally, "A jury can infer intent to cause physical bodily harm when under the circumstances, the prohibited result may reasonably be expected to follow from a voluntary act, irrespective of any subjective desire on the part of the offender to have accomplished the prohibited result." *Id*. at 859-60.

## IV.    Discussion

In Defendant's sole point on appeal, he asserts the trial court erred in denying his motions for judgment of acquittal with respect to Counts I and III (assault in the first degree), and Counts II and IV (armed criminal action). "A person commits the offense of assault in the first degree if he or she attempts to kill…or attempts to cause serious physical injury to another person." § 565.060, RSMo 2000. "An individual is guilty of purposely causing or attempting to cause physical injury to another when that individual consciously engages in conduct that causes such injury." *State v. Wren*, 317 S.W.3d 111, 123 (Mo. App. E.D. 2010). A person "acts purposely" when it is his conscious object to engage in that conduct or to cause that result. § 562.016.2, RSMo 2000. The same mental state is required for the armed criminal action counts.[3]

Defendant argues the evidence was insufficient to show he acted with the purpose of causing death or serious physical injury to either Errianna or Ebony. In this case, Defendant relies heavily on *State v. Whalen*, in which the Missouri Supreme Court reversed the defendant's conviction of first degree assault, holding the evidence did not permit a finding beyond a

---

[3] "Because the definition of armed criminal action does not expressly state a culpable mental state and a culpable mental state is required, armed criminal action requires a culpable mental state of acting purposely or knowingly." *State v. Williams*, 126 S.W.3d 377, 382 (Mo. banc 2004).

4

reasonable doubt that Whalen was aware of two of the lawmen he shot. 49 S.W.3d 181, 182-183 (Mo. banc 2001) (overruled in part on other grounds by *State v. Claycomb*, 470 S.W.3d 358, 362 (Mo. banc 2015)). *Whalen* is distinguishable on its facts, because the victims in that case were hidden from the defendant's view. *Id*. at 183. The *Whalen* defendant, holed up in a bedroom, could see and hear one officer through the doorway, and fired a shotgun at him. However; he could not be convicted of first degree assault of the other two officers because they were not visible to defendant in the hallway outside the room. *Id*.

In a more analogous case, *State v. McCrady*, the defendant claimed the State had not presented sufficient evidence that he acted purposefully for the crime of first degree assault. 364 S.W.3d 709, 710 (Mo. App. E.D. 2012). The undisputed facts demonstrated the defendant fired from a car multiple times into a crowd walking on a sidewalk. *Id*. The defendant claimed he was unaware of the presence of three of his victims because his intended target was a fourth person behind them and he emphasized that his visibility was low. *Id*. at 712. Our Court also highlighted that the testimony showed the group was in plain sight because nothing obstructed the defendant's ability to see the victims. *Id*. This Court held there was "sufficient evidence on the record for a jury to reasonably infer that Defendant was aware of the group's presence in his line of fire." *Id*.

In the present case, the victims were in Defendant's line of sight as well as in the line of fire. Both girls testified they ran toward Ebony's porch while the shots were being fired and subsequent investigation revealed shots had been fired into the building and bullet casings were found in front of the home. Errianna testified she could feel the dirt flying in her face from the shots hitting the ground around her. She also testified that she saw Defendant shooting at the man right beside her and she believed she would have been hit had she been just a little taller.

Both girls identified Defendant as the shooter and testified they saw him shooting at those around them.

From this evidence and the reasonable inferences therefrom, a reasonable juror could have found Defendant was aware of the presence of both sisters and acted with the purpose to kill or cause them serious bodily injury by shooting at them as they ran for safety. Therefore, there was sufficient evidence to support his conviction for assault in the first degree under Counts I and III and the accompanying armed criminal action under Counts II and IV. Accordingly, the trial court did not err in denying Curtis' motions for judgment of acquittal. Point denied.

## V.    Conclusion

The judgment of the trial court is affirmed.

_____
Colleen Dolan, Judge

Sherri B. Sullivan, P.J., concurs.
Roy L. Richter, J., concurs.

6