**STATE of Missouri, Respondent,**

v.

**Scott A. GILBERT, Appellant.**

**WD 79322**

Missouri Court of Appeals, Western District.

Opinion filed: October 24, 2017

CORRECTED OPINION NOVEMBER 1, 2017

Gregory L. Barnes, Jefferson City, for Respondent.

Damien de Loyola, for Appellant.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Gary D. Witt, Judge and Edward R. Ardini, Jr., Judge

### EDWARD R. ARDINI, JR., JUDGE

Scott A. Gilbert ("Gilbert") appeals his convictions following a jury trial in the Circuit Court of Platte County. On appeal, he alleges that there was insufficient evidence to support his convictions for two counts for first-degree assault of a law enforcement officer and the associated armed criminal action counts (Points I through IV); that the jury's verdicts relating to two counts of first-degree assault of a law enforcement officer lacked unanimity (Points V and VI); and that the trial court abused its discretion in admitting certain testimony (Point VII). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2013, Gilbert and two other inmates escaped from the Lansing Correctional Facility in Lansing, Kansas. Gilbert and one of the other escaped inmates stole a truck and drove to Platte City, Missouri. The truck had been reported stolen and was recognized by an officer at a stoplight in Platte City. The officer activated his

emergency lights and attempted to pull the stolen truck over, but the escapees did not stop and instead fled on I-29. Other officers quickly joined the pursuit. Gilbert located a shotgun in the truck, leaned out of the passenger window, and pointed it at the pursuing officers. The truck exited I-29, driving through two counties on three different highways. Gilbert fired toward the four pursuing officers at five different locations along I-29 and Highways E and B, and the officers each testified that their vehicles had small chips or damage after the chase that they believed resulted from the gunshots. Gilbert and his accomplice eventually crossed into Clinton County, where they barricaded themselves into a house for more than six hours before surrendering to police.

The jury found Gilbert guilty of four counts of first-degree assault of a law enforcement officer, four counts of armed criminal action, one count of first-degree tampering, and one count of resisting a lawful stop. The jury acquitted Gilbert of attempted kidnapping and an associated count of armed criminal action. Gilbert was sentenced to twenty-five years' imprisonment for each of the assault counts and seven years for the accompanying armed criminal action counts with all sentences to run consecutive to each other. Gilbert was also sentenced to six years on the tampering count and seven years for resisting arrest to run concurrent to each other and to the other sentences. Gilbert timely appealed. Additional facts are set forth throughout this opinion as necessary.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

Gilbert first alleges that there was not sufficient evidence to support two of his convictions for assault of a law enforcement officer (Points I and III) and the associated armed criminal action charges (Points II and IV). Specifically, he argues that the evidence did not support a conclusion that he *purposely* shot at *Deputy Mears* (Point I) and *purposely* shot at *Deputy Smith* (Point III) because they were at different times second and third in the line of police vehicles pursuing Gilbert. He claims the lone reasonable inference from the evidence is that he purposely shot at Sergeant Tharp and Deputy Macey, who were in the lead vehicle position at different times during the pursuit.

Our review is limited to determining "whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime." *State v. McAllister*, 399 S.W.3d 518 (Mo. App. E.D. 2013) (citation omitted). All evidence and favorable inferences therefrom that support the jury's verdict are accepted as true, and contrary evidence and negative inferences are disregarded. *Id.* (citation omitted).

 "A person commits the crime of assault of a law enforcement officer ... in the first degree if such person attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer ..." § 565.081.1.[1] "It is well settled that a person attempts to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards commission of the offense." *Bryant v. State*, 316 S.W.3d 503, 509 (Mo. App. E.D. 2010) (citations omitted). Although the "defendant [must] act purposefully as to the

---

1. All statutory citations are to the 2000 Revised Statutes of Missouri as supplemented through December 31, 2016.

person defendant is charged with assaulting[,]"[2] it is not required that the defendant "specifically decide[] to injure each particular person who was in fact threatened with injury." *State v. Whalen*, 49 S.W.3d 181, 186-87 (Mo. banc 2001), *overruled in part on other grounds by State v. Claycomb*, 470 S.W.3d 358, 362 (Mo. banc 2015);[3] *cf. McAllister*, 399 S.W.3d at 522 (holding that evidence was sufficient to support two counts of assault of a law enforcement officer where defendant alleged it was only reasonable to infer that he shot at the driver and not the passenger). Rather, "a person will be guilty of purposely causing or attempting to cause serious physical injury to another if the person consciously engages in conduct that causes such injury or it is his conscious object to cause such injury." *Id.* at 187; *see also McAllister*, 399 S.W.3d at 521.

█ "Specific intent is generally shown through circumstantial evidence" and "may be inferred from surrounding facts, such as the type of weapon used, the manner and circumstances under which it was used, and other relevant factors[,]" including the defendant's conduct before, during, and after the act. *McAllister*, 399 S.W.3d at 522 (citations omitted); *State v. Reed*, 402 S.W.3d 146, 151 (Mo. App. W.D. 2013). "Intentionally discharging a weapon in the proximity of a police officer is illustrative of a decision to take a substantial step toward injuring the law enforcement

officer." *McAllister*, 399 S.W.3d at 522; *cf. State v. Curtis*, 497 S.W.3d 381, 384 (Mo. App. E.D. 2016) (holding that evidence was sufficient to find that defendant acted with purpose to kill or cause victims serious bodily injury where victims were in defendant's line of sight and line of fire). Fleeing also supports a "showing of intent to assault an officer under section 565.081." *Reed*, 402 S.W.3d at 151.

█ Here, Gilbert shot at Deputy Smith at two different locations along Highway E. Deputy Smith's vehicle was struck by gunfire near Dick's Creek Road after Deputy Macey, the lead vehicle, swerved out of the line of fire. Similarly, Deputy Mears's vehicle was struck by gunfire near Malcolm Lake Road on B Highway after he had moved from fourth to third position and the two vehicles in front of him swerved out of the way. It is reasonable to infer from the evidence presented at trial, including the testimony of the officers and the dashcam videos, that Gilbert was aware of the pursuing officers' vehicles, that he consciously engaged in the conduct of shooting the weapon, and that his purpose was to cause serious physical injury to the officers pursuing him. *See Whalen*, 49 S.W.3d at 187. Even if Gilbert was aiming for the officer in the lead vehicle as he alleges, he was aware that he was firing toward the line of vehicles pursuing him. *Cf. McAllister*, 399 S.W.3d at 522 ("Even if . . . [the defendant] fired only one shot, he

---

**2.** Armed criminal action similarly "requires a culpable mental state of acting purposefully or knowingly." *State v. Curtis*, 497 S.W.3d 381, 384 n. 3 (Mo. App. E.D. 2016) (citation omitted).

**3.** Cases for general first-degree assault may be relied on in cases for assault of a law enforcement officer, as the language of the general first-degree assault and assault of a law enforcement officer statutes are substantially the same. *See, e.g., McAllister*, 399

S.W.3d 518 (§ 565.081 assault of a law enforcement officer) (citing to *Whalen*, 49 S.W.3d 181 (§ 565.050 first-degree assault)). In *Whalen*, the defendant shot toward an officer and was charged with general assault in the first degree under section 565.050, which provides that "[a] person commits the offense of assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person."

was aware he was firing at the driver of a vehicle carrying two people."). By intentionally firing a shotgun in the direction of these officers, Gilbert took a substantial step toward injuring them. *See id.* These shots "create[d] a high likelihood" that any of the pursuing officers would be injured or killed, and it was not required that he "specifically decided to injure each particular person who was … threatened with injury." *Whalen,* 49 S.W.3d at 186-87; *cf. McAllister,* 399 S.W.3d at 522 ("Common sense dictates that firing a bullet at the driver of a vehicle on a highway creates a high likelihood that both people inside the vehicle will be injured or killed."). Moreover, the jury could reasonably infer that Gilbert had a motive to shoot at all of the pursuing officers in order to avoid capture and being returned to the correctional facility. *See State v. Depriest,* 822 S.W.2d 488, 491 (Mo. App. S.D. 1991), *overruled on other grounds by State v. Carson,* 941 S.W.2d 518 (Mo. banc 1997) (noting that "[t]he jury could reasonably infer [the d]efendant ran to avoid arrest, and his motive to shoot [the officer] was to avoid a return to prison").

The evidence was sufficient to support both convictions of assault of a law enforcement officer and the associated armed criminal action charges [4] relating to Deputies Smith and Mears, and the trial court did not err in entering judgment based on the jury's verdicts. Points I through IV are denied.

## II. JURY INSTRUCTIONS

In his fifth and sixth points on appeal, Gilbert alleges that the trial court plainly erred in submitting Jury Instruc-

tions 23 (Count III regarding the assault of Deputy Macey) and 49 (Count VII regarding the assault of Deputy Smith), arguing that they failed to specifically identify the underlying facts of each charge.

Gilbert did not object to the jury instructions at trial, so his claims are now reviewable only under plain error. *See* Rule 28.03, *State v. Escobar,* 523 S.W.3d 545, 548 (Mo. App. W.D. 2017). "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Escobar,* 523 S.W.3d at 548 (citing Rule 30.20). The inquiry requires two steps: (1) the claimed error must in fact be a "plain[, *i.e.,* evident, obvious, and clear,] error affecting substantial rights," and (2) the error must actually "result in manifest injustice or a miscarriage of justice." *Id.* (citations omitted). "Instructional error is plain error when it is apparent the error affected the verdict." *Id.* (citations omitted). Reversal in a case of instructional error is warranted "when it is clear that the trial court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted." *Id.* (citations omitted).

Under the Missouri Constitution, "a jury verdict in a criminal case [must] be unanimous." *Id.* at 549 (citations omitted); *see also* Mo. Const. art. I, § 22(a). Unanimity issues often arise in multiple act cases "when there is evidence of multiple, distinct criminal acts, each of which would serve as the basis for a criminal charge, but the defendant is charged

---

4. Gilbert's sufficiency of the evidence argument directed at the armed criminal action convictions relating to Deputies Smith and Mears was wholly dependent on the success of his sufficiency of the evidence claims related to the assault of a law enforcement officer convictions involving those officers. Our finding that there was sufficient evidence to support both of those assault of a law enforcement officer convictions also results in our denial of the connected claims involving the associated armed criminal action convictions.

with those acts in a single count." *State v. Celis-Garcia*, 344 S.W.3d 150, 155-56 (Mo. banc 2011) (citation omitted). For a jury verdict to be unanimous in such cases, the jurors must be in substantial agreement as to the specific act or instance of criminal conduct supporting the conviction. *Escobar*, 523 S.W.3d at 549 (citing *Celis-Garcia*, 344 S.W.3d at 155). To prevent unanimity issues, (1) the State should "elect[ ] the particular criminal act on which it will rely to support the charge" or (2) the verdict director should "specifically describ[e] the separate criminal acts presented to the jury" and the jury should be "instructed that it must agree unanimously that at least one of those acts occurred." *Celis-Garcia*, 344 S.W.3d at 157.

Here, Deputy Macey testified that Gilbert shot at him at three different locations along Highway E and also on Highway B and Deputy Smith similarly testified that Gilbert shot at him at two different locations along Highway E. Instruction 23 provided:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about May 10, 2013, in the County of Platte, State of Missouri, the defendant attempted to cause serious physical injury to Michael Macey by shooting at him, and
>
> Second, that Michael Macey was a law enforcement officer, and
>
> Third, that defendant knew or was aware that Michael Macey was a law enforcement officer,
>
> then you will find the defendant guilty under Count III of assault of a law enforcement officer in the first degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty

of assault of a law enforcement officer in the first degree.

The verdict director for Count VII was identical except that it specified Colin Smith rather than Michael Macey.

Gilbert in essence argues that the lack of specificity in the verdict directors casts a cloud over whether the jurors unanimously agreed on the specific shot fired by Gilbert at each specific officer when reaching its guilty verdicts on Counts III and VII. For example, some of the jurors could have believed that Deputy Macey was only shot at along Highway E while others may have believed that Deputy Macey was only shot at along Highway B. *Cf. id.* at 156 ("Under the instructions, the jurors could convict [the defendant] if they found that she engaged in hand-to-genital contact with the children during an incident in her bedroom, *or* the enclosed porch, *or* in the shed, *or* in the bathroom."). However, a typical multiple act case involves similar acts occurring at different times and locations. *See, e.g., id.* (two minors allegedly sexually abused on several occasions at different locations within home and on the property), *Hoeber v. State*, 488 S.W.3d 648, 654-55 (Mo. banc 2016) (alleged sexual abuse of minor occurring at different times and locations within the home). This case is distinguishable from the typical multiple act case because the conduct here occurred during a single event, the pursuit of Gilbert after his escape from prison, and lacked any intervening events or fresh impulses of motivation. *See Celis-Garcia*, 344 S.W.3d at 156 (stating that courts may consider "whether there was an intervening event" or "fresh impulse motivating some of the conduct" in determining if a case is a multiple act case).

Regardless, assuming *arguendo*, it was error to give Instructions 23 and 49, Gilbert has not established that the error affected the verdict and "resulted in mani-

fest injustice or a miscarriage of justice, thereby warranting reversal." *Escobar*, 523 S.W.3d at 551 (citations omitted). This case is not like *Celis-Garcia*, where the defendant presented an incident-specific defense raising "evidentiary inconsistencies and factual improbabilities respecting each specific allegation of [shots fired at the officers,]" which would support a conclusion that such an error resulted in manifest injustice or a miscarriage of justice. 344 S.W.3d at 159. This case is also unlike *Hoeber*, where, even though the defendant did not present an incident-specific defense, manifest injustice still resulted from the lack of specificity in the verdict director because of the inconsistencies in the witness' testimony regarding which acts actually occurred. 488 S.W.3d at 655 (holding that "the verdict directors failed to ensure a unanimous jury verdict" where they "failed to identify any specific incident or room in which the conduct occurred" and the testimony was inconsistent as to whether the conduct occurred "in the kitchen *or* in the bathroom *or* in the living room *or* in the bedroom"). Rather, Gilbert relied on a general denial defense, claiming that although he pointed the shotgun at the pursuing officers to deter them, he did not actually fire the weapon and the damage to each of the vehicles was attributable to pebbles being kicked up during the chase. Although Gilbert's lack of an incident-specific defense is not necessarily determinative of our manifest injustice inquiry, it is a relevant consideration and carries greater weight here because the evidence relating to the various gunshots lacked any significant variation. *See Escobar*, 523 S.W.3d at 552 (citation omitted) ("Relevant, but not de-

terminative to [the manifest injustice] inquiry, is the nature of the defense mounted[.]").

Gilbert nevertheless asserts that manifest injustice resulted because evidence of multiple acts was introduced at trial and the State emphasized the multiple acts in its closing argument. *See Hoeber*, 488 S.W.3d at 656 (concluding that "[g]iven the evidence of multiple acts of abuse introduced at trial and the state's emphasis on such evidence in its closing argument, the non-specific verdict directors created a real risk that the jurors did not unanimously agree as to the acts for which they were finding [the defendant] guilty[,]" despite the fact that defendant only asserted a general defense at trial). As discussed above, *Hoeber* is distinguishable due to the inconsistencies in the evidence presented in that case regarding the location of the various acts. Moreover, although five locations where gunfire occurred were reviewed with each officer, the State connected specific locations to the officers most impacted at those locations. For example, the State tied the shots fired on I-29 to Sergeant Tharp, who was the lead vehicle at that time, and the shots fired near Malcolm Lake Road on B Highway to Deputy Mears, who was in third position but was directly in the line of fire and heard the shots hit his windshield after Deputies Macey and Smith swerved out of the way. Important to this point, the State focused its case with regard to Deputies Macey and Smith on the shots fired east of the first Dick's Creek Road intersection on E Highway, where those officers are heard on the dashcam video stating that the shots hit their vehicles and are seen swerving out of the line of fire.[5] When the State

5. Gilbert argues that the State did not focus its inquiry or closing argument but also argues that double jeopardy and miscarriage of justice concerns are raised because there is a

"real probability" that the jury convicted Gilbert for assaulting Deputies Macey and Smith based on a single shot. We do not share these concerns, as even a single shot created a high

focuses its case on a specific act that the defense only generally denies, there is not a reasonable probability that the verdict would have been different if the instructions were more specific and no manifest injustice or miscarriage of justice results from the error. *See Escobar*, 523 S.W.3d at 552-53 (finding the defendant had failed to prove that the error affected the verdict where the defendant asserted only a general defense and the State focused its inquiry on two particular incidents).

In light of the facts that the multiple acts occurred during a single, uninterrupted pursuit; that Gilbert asserted only a general denial defense; that there were not significant inconsistencies in the remaining evidence presented at trial; and that the State focused its argument with respect to Deputies Macey and Smith on the shots fired on E Highway east of the first Dick's Creek Road intersection, it cannot reasonably be said that any alleged instructional error affected the verdict. Points V and VI are denied.

### III. ADMISSION OF TESTIMONY

▮ Gilbert alleges in his final point on appeal that the trial court abused its discretion in allowing the State to elicit without restriction testimony regarding Gilbert's use of the "n"-word, arguing that the evidence had no probative value and was highly prejudicial.

On cross-examination, Gilbert volunteered that none of his more than fifty prior felony convictions was for a violent offense. The State asked whether having a knife in jail was violent, and Gilbert replied that it was not because he "was going to commit suicide with it." Based on this claim by Gilbert, the State called a rebut-

tal witness who testified that Gilbert was not planning to commit suicide with the knife but instead that Gilbert had screamed out that he had the knife and "was going to use it to kill that ['n'-word]" and clarified that Gilbert's comment was directed at an African-American inmate. The court allowed the testimony over the defense's objection.

▮ A trial court's admission of evidence "is reviewed for an abuse of discretion." *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015) (citation omitted). "A trial court abuses its discretion only if its decision to [admit or] exclude evidence is 'clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Id.* (citation omitted). The requirements for the admission of evidence are well established:

> [E]vidence must be both logically and legally relevant. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Evidence is legally relevant when the probative value of the evidence outweighs "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness."

*Id.* (citations omitted). Even if the trial court abused its discretion in admitting or excluding evidence, relief will only be granted if the error was prejudicial to the defendant. *Id.* (citation omitted). The error is only prejudicial if there is a reasonable probability that it affected the outcome of the trial and thus "deprived the defendant of a fair trial." *Id.* (citation omitted).

The parties agree that Gilbert's volunteered comments about his purpose for possessing the knife opened the door to further inquiry on this point. Accepting

---

likelihood that either or both of the officers would be injured and thus would support assault convictions as to both officers. *Cf. McAllister*, 399 S.W.3d at 522 (holding that

one shot fired at pursuing officer vehicle was sufficient to support two convictions; one relating to the driver and one relating to the passenger).

that the evidence that Gilbert had a violent purpose in possessing the knife was properly admitted, the probative value of Gilbert's statement that he was "going to use [the knife] to kill that ['n'-word]" was minimal. Neither the knife nor the threatened inmate was related to this case; rather, they were only relevant to impeach Gilbert's claim that he had not previously been convicted of a violent felony. *Cf. State v. McDaniel* 254 S.W.3d 144, 147 (Mo. App. E.D. 2008) (finding that use of the "n"-word was highly probative because the defendant yelled the word in threats to the potential victim and it demonstrated the defendant's "acute animosity toward the victim and his clear motive and intent to do harm"). This impeachment could have been accomplished in a manner much less likely to cause prejudice by having the rebuttal witness simply testify that Gilbert had planned on stabbing another inmate with the knife.

■ However, regardless of the word's relevance to this case, we find nothing in the record to indicate a reasonable probability that it "had an effect on the jury's deliberations to the point that it contributed to the guilty verdict." *State v. Walter*, 479 S.W.3d 118, 126 (Mo. banc 2016). This is not, as Gilbert alleges, a close case where a slight error can be found prejudicial. *See State v. Blakely*, 203 S.W.3d 806, 816 (Mo. App. S.D. 2006) ("Error which in a close case might call for reversal may be disregarded as harmless when the evidence of guilt is strong." (citation omitted)). Although Gilbert generally contested shooting at the officers,[6] his testimony was wholly inconsistent with other evidence presented at trial, including dashcam videos from three of the pursuing vehicles corroborating the testimony of the law enforcement officers, and the "n"-word was

admitted for the narrow purpose of impeaching Gilbert and not as evidence in support of his ultimate guilt.

In sum, even if the trial court erred in allowing the State to elicit testimony that Gilbert used the "n"-word in reference to another inmate, there is not a reasonable probability that the word's admission regarding a collateral matter "had an effect on the jury's deliberations to the point that it contributed to the guilty verdict." *See Walter*, 479 S.W.3d at 126. Gilbert's final point is denied.

### CONCLUSION

The judgment of the trial court is affirmed.

All concur.

6. *See Walter*, 479 S.W.3d at 126 (holding that admission of evidence was prejudicial in part because the defendant contested the State's evidence presented but also because there was not overwhelming evidence to support the conviction).