

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,        )
                                      )
v.                                    )    No. SD37873
                                      )
                                      )    Filed: **August 22, 2024**
                                      )
D'ERECK WHITNEY,                      )
    Defendant-Appellant.         )

### APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable David Andrew Dolan, Judge

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS

Defendant D'Ereck Whitney ("Defendant") appeals his convictions for one count of murder in the first degree, §565.020[1]; one count of armed criminal action, §571.015; eleven counts of assault in the first degree, §565.050; one count of unlawful use of a weapon, §571.030; and two counts of property damage in the first degree, §569.100. Defendant asserts two points on appeal, arguing that the trial court erred in admitting a YouTube video of Defendant into evidence, and that the evidence was insufficient to support his first-degree assault convictions.

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016.

While Defendant fails to show that the trial court erred in admitting the YouTube video, this Court agrees that there was insufficient evidence to support some of Defendant's convictions for assault in the first degree. As the jury found all the elements of a lesser included offense, this Court will remand the case for entry of misdemeanor convictions for assault in the fourth degree as to counts 4-5, 7-9, and 11-14. The case is affirmed in part, reversed in part, and remanded for further proceedings.

### Factual Background and Procedural History

On December 11, 2018, Defendant got into a dispute on Facebook with multiple people, including J.W. After the argument, Defendant called A.D. to get a ride. A.D. and C.G. picked up Defendant in A.D.'s car. When A.D. picked Defendant up, Defendant had an AK-47 rifle. Defendant was upset and told A.D. about the Facebook argument with J.W. Defendant asked A.D. to drop him off near Alabama Street. When A.D. dropped Defendant off, Defendant told A.D. and C.G., "I'm going to shoot this house up." Defendant also made a phone call to T.H. Defendant told T.H. that he was upset about the things J.W. had said on Facebook and wanted to "get him."

Minutes before the shooting, T.F. was leaving the house on Alabama Street while his brother, A.F., and R.W. ("Decedent"), were walking in. Around 7:00 p.m., Defendant fired the AK-47 seventeen times towards the house. When Defendant opened fire, there were six adults in the house, including J.W., who was in a bedroom, and Decedent, who was in the kitchen. There were also five children in the home. Decedent died from a gunshot wound to the chest.

Following the shooting, Defendant again called T.H. Defendant told T.H. that he got his first "M," meaning murder. Defendant also called A.D. and requested to be picked up.

Defendant told A.D. that he "hit somebody, but he didn't know who." A.D. drove Defendant to a house in Sikeston, and eventually to Defendant's father's home in Charleston.

Officers arriving on scene found several bullet holes throughout the home. Officers collected shell casings from an AK-style rifle at the graveyard across the street from the house. The shell casings matched the ammunition found in Defendant's rifle. Investigators also found a shoe print in the graveyard across the street from the home that matched the shoes Defendant was wearing when arrested.

A.D. informed officers of Defendant's possible location. Officers arrested Defendant at his father's home around seven hours after the shooting. Defendant's father denied that Defendant was there, but officers found Defendant hiding in a bedroom closet. At the time Defendant was arrested, he was wearing pants that later tested positive for gunshot residue. Defendant's hands also tested positive for gunshot residue.

At trial, Defendant's opening statement was focused on the question of "[w]ho did it?" Defendant spent much of his opening statement talking about A.D., the State's "coin-operated witness." Defendant talked about how A.D.'s story had changed and how A.D. was in jail until he implicated Defendant in the crime. Defendant referenced a video from A.D.'s phone that showed A.D. handling firearms.

Defendant continued to focus on the question of "[w]ho did it?" during his cross-examination of A.D., eliciting testimony that A.D. was the "only person in this case that has . . . admitted to having a gun." Defendant sought to introduce a video of A.D. shooting guns. The State objected to the introduction of this video on grounds that it had nothing to do with the case, and Defendant's counsel responded that "if [A.D.] can get a gun like that, he can get an AK-47."

3

The trial court permitted Defendant to elicit information about A.D.'s experience with guns, provided that counsel asked A.D. about guns A.D. actually had.

Later, outside the jury's presence, the State sought to admit a YouTube video of the Defendant rapping. At one point in the video, Defendant is holding what appears to be an AK-47. Defendant objected to the introduction of the video on grounds that there was a lack of foundation, that it was protected speech under the First Amendment, and that it was character evidence being introduced to show that Defendant was a bad person. The State responded that the video was not being introduced for improper character purposes but instead to show that Defendant had access to the type of weapon used. The State further argued that Defendant opened the door to admission of the video to rebut the inference that A.D. was the only person with access to guns. The court overruled Defendant's objection, and granted Defendant a continuing objection.

The State introduced the YouTube video during testimony of a digital forensic investigator. During the video, Defendant referenced "thirty rounds," saying "thirty rounds, gonna gun them down." The murder weapon held thirty rounds. Defendant elicited testimony on cross-examination that the gun in the video was not the same gun used in the murder, and that the investigator had no evidence that the gun in the video was real, as opposed to a prop.

The prosecutor did not mention the video in her initial closing argument to the jury. In Defendant's closing argument, Defendant again discussed A.D. as a "coin-operated witness" who told a story to get out of time in prison. Defendant brought up A.D.'s familiarity with guns, saying "[w]e know he has moved guns in the past. We know that his [sic] familiar with guns. He likes to show off his guns." Defendant also discussed the video during the following portion of his closing argument:

4

I pulled the gun out for a reason. It would be something if that was actually the gun that was on the video. It wasn't. Yet somehow they want to smear a kid who enjoys rapping, who may have had a prop gun, who did have a prop gun. They assumed it was a real gun. From . . . the officers' testimony it's, oh, yeah. All guys have real guns. We have all heard that saying what assumptions lead to. They make something out of us.

The prosecutor made only one brief reference to the video in her rebuttal argument, stating "30 rounds going to gun them down. Interesting choice of words for your rap video, Mr. Whitney."

The jury found Defendant guilty on all counts. Defendant waived jury sentencing. The trial court sentenced Defendant to life without parole for murder in the first degree, fifteen years for armed criminal action, ten years for each count of assault in the first degree, and fifteen years for unlawful use of a weapon. All of the sentences were ordered to run consecutively. The trial court entered fines on each count of property damage and ordered restitution.

The standard of review for each of Defendants' two points varies and is partially disputed. We will therefore discuss the applicable standard of review in the analysis of each point.

## Analysis

I.    Admission of the YouTube video

As to Point I, Defendant asserts that the trial court abused its discretion in admitting State's Exhibit 128 at trial as it was improper character evidence or propensity evidence. The State contends that this Court should only review this point for plain error because Defendant failed to preserve this issue for appeal.

To preserve an issue for appeal in a jury-tried case, a defendant must: (1) timely object to the evidence at the time of trial; (2) restate the objection on the same basis in the motion for new trial; and (3) make the claim in his or her appellant's brief. *State v. Brown*, 661 S.W.3d 27, 38-39 (Mo. App. S.D. 2023) (citing *State v. Crider*, 611 S.W.3d 904, 907 (Mo. App. S.D. 2020)).

5

The objection at trial must be made contemporaneously with the alleged error. *Id.* at 39. "The objection at trial must be specific, and on appeal, the same grounds must be relied upon." *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012). A defendant may not broaden the objection presented to the trial court on appeal. *Id*.

"Character and propensity evidence are distinct from one another." *State v. Shockley*, 410 S.W.3d 179, 193 (Mo. banc 2013). Character evidence is evidence that concerns a person's reputation, such as whether people in the defendant's community view the defendant as a law-abiding citizen, a peaceable person, a truthful person, or as having any other general character trait. *Id*. Character evidence does not involve proof of specific prior instances of conduct. *Id*. Propensity evidence, on the other hand, is "evidence of specific and distinct prior acts" such as uncharged crimes, wrongs, or acts. *Id*. An objection to character evidence therefore does not preserve a claim of improper propensity evidence. *See id.* (holding that a defendant who objected to evidence solely on the ground that the evidence went "to character" failed to preserve an objection to the same evidence for improper use of propensity evidence.).

Defendant cannot broaden the objection made to the trial court on appeal. In his brief, Defendant asserts error in admitting the YouTube video on both propensity and character grounds. At trial, Defendant objected to the admission of the video *only* as improper character evidence, and did not raise an objection that the video was also propensity evidence. Thus, Defendant preserved an objection related to improper character evidence for appeal, but not propensity evidence.

These two issues would generally require analysis under separate standards of review, abuse of discretion and plain error. We need not perform such analysis, however, because

6

regardless of the standard of review, the YouTube video was proper evidence at trial because Defendant opened the door to its admission.

Otherwise inadmissible evidence can become admissible because a party has opened the door to it with a theory presented in an opening statement or through cross-examination of a witness. *Shockley*, 410 S.W.3d at 194 (citing *State v. Rutter*, 93 S.W.3d 714, 727 (Mo. banc 2002), and *State v. Watson*¸ 391 S.W.3d 18, 23 (Mo. App. E.D. 2012)). "Where 'the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative issue raised by the issue [the] defendant interjects.'" *Id.* (quoting *State v. Lingar*¸ 726 S.W.2d 728, 734-35 (Mo. banc 1987)).

Here, Defendant attempted to create the inference, beginning in his opening statement and continuing through his cross examination of A.D., that the gun recovered by the police belonged to A.D. and that A.D. was the shooter. Defendant questioned A.D. about his ownership and familiarity with guns. Defendant also played a video depicting A.D. shooting firearms to support this inference. To admit the video, Defendant argued that, although the gun in A.D.'s video was different, "if [A.D.] can get a gun like that, he can get an AK-47."

The YouTube video was admitted to counteract an issue Defendant interjected. The video was admissible to rebut the inference created by Defendant that A.D. was the shooter because he was the only person connected to the case who had access to guns. Because Defendant opened the door, the evidence was properly admitted regardless of whether it was propensity or character evidence, and regardless of whether the issue is examined for an abuse of discretion or plain error.

7

Even if the YouTube video was improperly admitted, which the Court rejects, it would not constitute an abuse of discretion.[2]  Error in admitting evidence "will not be reversed on appeal absent a showing of prejudice."  *State v. Proby*¸ 437 S.W.3d 375, 377 (Mo. App. S.D. 2014) (quoting *State v. Simmons*¸ 944 S.W.2d 165, 178 (Mo. banc 1997)).  Relief will not lie unless such error prejudices the entire proceeding against the defendant.  *Proby*, 437 S.W.3d at 377 (citing *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997)).  This Court must be persuaded that evidence "so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence."  *Id.*  (citing *Roberts*¸ 948 S.W.2d at 592).

Here, there is no reasonable probability that the jury would have reached a different conclusion but for the admission of the YouTube video.  The State presented evidence that Defendant was mad at J.W and that Defendant would hurt him if he could.  Two witnesses, A.D. and C.G., testified to dropping off Defendant, who had an AK-47, near J.W.'s home.  Video footage taken that night showed Defendant getting in and out of A.D.'s car near the scene of the shooting.  A photo of the AK-47 in the back seat of A.D.'s vehicle was admitted.  GPS coordinates of the photo indicated it was taken in the parking lot of a liquor store while Defendant was inside the store.

Officers testified that the shots were fired from a graveyard across from the home on Alabama Street.  Investigators found a shoe print in the graveyard that matched the shoes

---

[2]Abuse of discretion (for preserved error) is a lower standard of review than plain error review.  *Lawrence v. State*, 628 S.W.3d 777, 785 (Mo. App. S.D. 2021) (citing *Deck v. State*, 68 S.W.3d 418, 427 n.5 (Mo. banc 2002)).  Thus, a lack of prejudice under an abuse of discretion review necessarily precludes finding prejudice under the higher "plain error" standard.  *Id.* at 785.

Defendant was wearing when he was arrested. Investigators also found shell casings that matched the ammunition used in the AK-47. Defendant was arrested while hiding in a closet in his father's house. A gunshot residue analysis revealed the presence of gunshot residue on Defendant's hands, as well as the pants he was wearing. A witness testified that Defendant called her after the shooting and told her he got his first "M," meaning murder.

Among the totality of the State's evidence, the YouTube video was "an isolated incident of minimal consequence in the course of a long trial." *State v. Howery*, 427 S.W.3d 236, 251 (Mo. App. E.D. 2014). The State briefly questioned a digital forensic investigator about Defendant holding an AK-47 in the video and made a limited reference to the video by asking the investigator about one line of the song. The State only referred to the video briefly during rebuttal arguments in response to Defendant's reference to the video in his closing argument. Admission of the video was not in error, and even if it was, Defendant fails to show prejudice from its admission that would constitute an abuse of discretion or plain error. Point I is denied.

II.     Sufficiency of the evidence for assault convictions

As to Point II, Defendant asserts that the trial court erred in finding him guilty for assault in the first degree as to counts 3-5, 7-9, and 11-14 because there was insufficient evidence to support those convictions. To determine whether the evidence presented was sufficient to support a conviction, this Court accepts as true all evidence tending to prove guilt, including all reasonable inferences that support the verdict, and we ignore all contrary evidence and inferences. *State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016) (citing *State v. Ess*, 453 S.W.3d 196, 206 (Mo. banc 2015)). This Court's role is limited to "a determination of whether the [S]tate presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty." *State v. Twitty*, 506 S.W.3d 345, 346 (Mo. banc 2017) (citing *State v.*

9

*Vandevere*, S.W.3d 107, 108 (Mo. banc 2005)). The appellate court "defer[s] to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony." *State v. Davis*, 219 S.W.3d 863, 866 (Mo. App. S.D. 2007) (citing *State v. Nichols*, 20 S.W.3d 594, 597 (Mo. App. S.D. 2000)).

Assault in the first degree requires a defendant to attempt to kill or knowingly cause or attempt to cause serious injury to another person. §565.050.1. For a first-degree assault conviction, the defendant must act purposely as to the specific victim. A person "will not be guilty of purposely causing or attempting to cause such injury if the person is unaware of the likely presence of the injured person at the time the person acts, although the person may be guilty of criminally reckless or negligent conduct, depending on the state of his knowledge." *State v. Whalen*, 49 S.W.3d 181, 186-87 (Mo. banc 2001). Attempt is limited to purposive conduct, requiring specific intent to commit the crime attempted. *Id.* at 186. Specific intent may be based on circumstantial evidence or inferred from surrounding facts, such as the type of weapon used, the manner and circumstances under which it was used, and other relevant factors, including the defendant's conduct before, during, and after the act. *State v. Gilbert*, 531 S.W.3d 94, 99 (Mo. App. W.D. 2017). "The key issues are whether the defendant is aware multiple people are present and, if so, whether the defendant purposely engaged in conduct likely to cause physical injury to all of them." *State v. Garrett*, 598 S.W.3d 904, 907 (Mo. App. E.D. 2020).

In *Whalen*, a defendant fired a shot from his bedroom at a police officer who was standing in the doorway. *Whalen*, 49 S.W.3d at 183. Two other officers, who defendant had not seen, felt effects from the gunshot and required medical care. *Id.* at 183-84. The defendant was convicted of first-degree assault for attempting to cause serious physical injury to the latter two officers. *Id.* at 184. The Supreme Court of Missouri reversed, holding there was insufficient

10

evidence to permit a jury to find beyond a reasonable doubt that the defendant was aware of the presence of the two officers and that he attempted to cause them serious physical injury when he fired the shot. *Id.* at 187.

Defendant does not challenge the assault conviction (Count 6) as to J.W., as there was evidence that Defendant had the specific intent of attempting to cause him serious physical injury. Defendant challenges all of his remaining convictions for first degree assault.

The State argues, and this Court agrees, that there is sufficient evidence from which a jury could reasonably find that Defendant was aware of the presence of A.F. inside the house when Defendant opened fire. Testimony at trial revealed that A.F. and Decedent were walking into the home on Alabama Street only a few minutes before the shooting. Defendant told A.D. just after the shooting that he "hit somebody, but didn't know who." The jury could reasonably infer that Defendant was aware of A.F.'s presence, and that Defendant purposely engaged in conduct likely to cause injury to A.F. Defendant's conviction for first degree assault as to A.F. (Count 3) is therefore affirmed.

As to the remaining first-degree assault convictions, the State concedes that there was insufficient evidence to support such convictions. There is no evidence in the record that Defendant would have known any other specific individuals were present in the home when he opened fire. Instead of a dismissal, the State asks this Court to enter convictions against Defendant for the lesser included offense of assault in the fourth degree.

Where a conviction is overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense "if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense." *Whalen*¸ 49 S.W.3d at 187-88 (quoting *State v. O'Brien*, 857

11

S.W.2d 212, 220 (Mo. banc 1993)). A conviction for such a lesser included offense may be entered even in the absence of an instruction at trial for that offense. *See State v. Dooley*, 919 S.W.2d 539 (Mo. App. E.D. 1995).

"A lesser-included offense is an offense established by proof of the same or less than all the facts required to establish the commission of the charged offense." *State v. Coker*¸ 210 S.W.3d 374, 380 (Mo. App. S.D. 2006) (quoting *State v. Whiteley*¸184 S.W.3d 620, 623 (Mo. App. S.D. 2006)). Assault in the fourth degree is a lesser included offense of assault in the first degree. §556.046.1(2). A person commits assault in the fourth degree if he recklessly engages in conduct which creates a substantial risk of death or serious physical injury to another person. §565.056.1(4). A person "acts recklessly" when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. §562.016.4. When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly. §562.021.4.

In *England v. State*, 85 S.W.3d 103, 105 (Mo. App. W.D. 2002), the defendant shot randomly at a house at around four in the morning. The defendant pled guilty to first degree assault for attempting to kill one of the home's residents, and second-degree assault as to another resident. *Id*. The court set aside the guilty plea as to the first-degree assault conviction because there was no evidence to support that the defendant had the specific intent to kill. *Id.* at 110. The defendant was aware that people lived in the home and knew that at four in the morning people were likely to be home. *Id.* at 108. Even though the defendant was not certain that anyone was in the house, the court noted that the defendant's admissions showed that he at least acted recklessly. *Id.* at 109. *See also State v. Kester*¸ 201 S.W.62, 63 (Mo. 1918) (holding that

12

firing in the direction of a house may lead to a presumption that a defendant knew there were human beings inside, even though it will not suffice to establish intent to kill required for first degree assault), and **Whalen**, 49 S.W.3d at 188 (reasoning that Mr. Whalen's discharge of a firearm in his home "permitted the jury to find that he acted in conscious disregard of a substantial risk of injury to others.").

Here, Defendant fired seventeen rounds from an AK-47 into a dwelling. Defendant had visited his previous girlfriend at the home on Alabama Street. A reasonable juror could infer that Defendant was familiar with the home as a dwelling. Defendant shot at the house around 7:00 p.m., during a time that people were likely to be in the home. Defendant also knew that at least two people had entered the home before he started shooting. In convicting Defendant of assault in the first degree, the jury found that Defendant committed these acts "knowingly" and "purposefully." Such a finding is sufficient to establish that Defendant also acted "recklessly," in conscious disregard of a substantial risk of serious physical injury to others. §562.016.4.

All the elements necessary for convicting Defendant of assault in the fourth degree were necessarily found by the jury in this case. As such, the convictions for assault in the first degree that were not supported by substantial evidence are reversed, and convictions for the class A misdemeanor of assault in the fourth degree should be entered.[3]

### Conclusion

Defendant's convictions as to counts 1-3, 6, and 15-17 are affirmed. Defendant's convictions as to counts 4-5, 7-9, and 11-14 are reversed. The matter is remanded to the trial

---

[3] §565.056(4).2. On remand for sentencing, the sentence must be "within the range provided for that offense and not greater than that recommended by the jury." **Dooley,** 919 S.W.2d at 543. On remand, the State is not permitted to attempt to establish that Defendant is a prior or persistent offender, as that would violate the timing requirement of §558.021.2. *See **State v. Emery**,* 95 S.W.3d 98 (Mo. banc 2003) and **State v. Severe,** 307 S.W.3d 640 (Mo. banc 2010).

13

court for entry of a judgment reflecting convictions for the class A misdemeanor of assault in the fourth degree as to each of those counts. The trial court should then proceed to resentence Defendant on those modified convictions.


MATTHEW P. HAMNER, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS