**STATE of Missouri, Respondent,**

v.

**Gemner C. ESCOBAR, Appellant.**

**WD 79163**

Missouri Court of Appeals, Western District.

OPINION FILED: June 20, 2017

Karen L. Kramer, Jefferson City, MO, for respondent.

Damien S. Bhakti De Loyola, Kansas City, MO, for appellant.

Before Division One: Gary D. Witt, Presiding Judge, Alok Ahuja, Judge and Edward R. Ardini, Jr., Judge

Gary D. Witt, Judge

Appellant Gemner Escobar ("Escobar") appeals from his convictions following a jury trial before the Circuit Court of Jackson County. Escobar was accused by his step-daughter of repeated acts of molestation. Escobar was found guilty of two counts of first-degree child molestation, section 566.060,[1] and sentenced to nine years of incarceration on each count to be served concurrently. Escobar now raises five points on appeal. We affirm.

## Factual Background

The victim, A.E., was born in the year 2000 and since her birth, Escobar, her step-father, has been the father figure in her life. In 2012, A.E.'s mother was working as a nurse's assistant at night. At this time, A.E. was twelve years old, and Escobar was responsible for waking up A.E. in the morning to get ready for school because A.E.'s mother was still at work. A.E. testified that, beginning in November of 2012, Escobar entered her bedroom and got into bed with her each morning. He got under the comforter and touched A.E. under the clothing she wore to bed, touching her breasts, thighs, and sometimes her vagina with his hands. The touching would last for about fifteen minutes until A.E.

was told to get up and get ready for school. A.E. testified this touching repeatedly occurred thereafter, almost every morning that she had school, and continued until Escobar's sons moved into the home with them in April of 2013.

A.E. first reported this abuse to a counselor at her school, Alesha Roberson ("Roberson") in December of 2013. A.E., who was then in seventh grade, told Roberson she was being abused by her step-father. She told Roberson about the abuse in the mornings and said that it also occurred at night. A.E. was afraid to tell her mother about the abuse because Escobar and her mother already fought and she did not want her mother to be hurt. A.E. also explained that she did not report the abuse because she did not want to be responsible for breaking up the family. A.E. agreed with Roberson, however, that she would tell her mother. Roberson, as a mandated reporter, called the Division of Family Services and informed them of the abuse.

Forensic Examiner Erin Waterson ("Waterson") interviewed A.E. regarding the abuse. A.E. also told Waterson that Escobar came into her bedroom in the mornings and would rub her breasts and thighs. The interview was recorded, and the recording was played for the jury at trial.

The defense presented no witnesses or evidence. Escobar did argue in closing that A.E.'s allegations were not credible. Escobar's theory in closing argument was that A.E. lied because she wanted to get her mother out of her relationship with Escobar.

The State submitted to the jury two counts of first-degree child molestation. Counts I and II were based on the identi-

---

1. All statutory citations are to RSMo. 2000 as updated through the December 31, 2016 cumulative supplement, unless otherwise indicated.

cal allegation that Escobar touched A.E.'s breast for the purpose of arousing or gratifying his sexual desire. Count I was for the time period between November 1, 2012 and February 1, 2013. Count II was for the time period between February 2, 2013 and April 30, 2013. The jury found Escobar guilty on both counts, and Escobar was sentenced to nine years of imprisonment on each count to run concurrently. Escobar now appeals. Additional facts will be presented in the analysis section below as necessary.

## Standard of Review

Each of Escobar's five points on appeal raise allegations of plain error regarding the instructions submitted to the jury. Escobar failed to object at trial to any of the instructions he now claims on appeal were deficient. The failure by Escobar to object to a jury instruction constitutes a waiver of that claim of error. *See* Rule 28.03 [2] ("Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection [. . .]. The objections must also be raised in the motion for new trial in accordance with Rule 29.11"); *see also State v. Vaughn*, 11 S.W.3d 98, 105 (Mo. App. W.D. 2000).

 However, Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

In applying plain error review, this Court frequently uses a two-step inquiry. First, the Court must determine whether the claimed error is, in fact, "plain error[ ] affecting substantial rights." Rule 30.20. Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected. *Id.* An error is plain if it is "evident, obvious, and clear." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). In the realm of instructional error, plain error exists when it is clear that the trial court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted. *State v. Ousley*, 419 S.W.3d 65, 75 (Mo. banc 2013). Instructional error is plain error when it is apparent the error affected the verdict. *State v. Miller*, 372 S.W.3d 455, 470 (Mo. banc 2012). Second, if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice. *Baumruk*, 280 S.W.3d at 607–08.

*State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014). The defendant bears the burden to prove that instructional error has produced manifest injustice. *State v. Berry*, 506 S.W.3d 357, 362 (Mo. App. W.D. 2016). "Instructional error seldom rises to the level of plain error." *Id.*

## Points One and Two

In Points One and Two on appeal, Escobar argues that the trial court plainly erred, in violation of his right to a unanimous jury, under Article I, section 22(a) of the Missouri Constitution, because this

**2.** All rule references are to the current Missouri Supreme Court Rules unless indicated

otherwise.

was a multiple-act case and Jury Instructions 7 (Count I) and 11 (Count II) allowed the jury to find Escobar guilty of first-degree child molestation without unanimously agreeing on a specific incident of abuse, thereby resulting in a miscarriage of justice. Related to this claim, in Point Three Escobar argues that the trial court also erred in failing to submit to the jury a unanimity instruction. As no objections to these claimed errors were raised at trial, the claims can only be reviewed for plain error.

The trial court submitted Instruction 7 to the jury, which read:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt: First, that between and including November 1, 2012 and February 1, 2013, in the County of Jackson, State of Missouri, the defendant touched the breast of A.E., and

Second, that defendant did so for the purpose of arousing or gratifying the defendant's own sexual desire, and

Third, that A.E. was a child less than fourteen years old, then you will find the defendant guilty under Count I of child molestation in the first degree.

The verdict director for Count II was identical, except that it specified that the charged time period was between February 2, 2013 and April 30, 2013. In closing argument, the State explained to the jury that Count I was for the first incident of molestation that A.E. could remember and Count II was for the final incident of molestation she could remember.

 The Missouri Constitution provides "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate[.]" Mo. CONST. art. I, sec. 22(a). This provision requires that a jury verdict in a criminal case be unanimous. *See State v. Hadley*, 815 S.W.2d 422, 425 (Mo. banc 1991); *State v. Celis-Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011). "For a jury verdict to be unanimous, the jurors must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." *Celis–Garcia*, 344 S.W.3d at 155 (internal quotation omitted).

The unanimity requirement has been addressed in a number of recent cases in situations, such as the case at bar, where there the charged criminal conduct is repeated instances of sexual abuse against minor victims. *See e.g., id.*; *Hoeber v. State*, 488 S.W.3d 648, 653 (Mo. banc 2016). Because the victims are children and often do not have a recollection of the specific dates on which the abuse occurred, the State in charging the criminal conduct attempted to set forth in generic terms the alleged criminal conduct within a certain time-frame. However, where there are repeated instances of the same charged criminal conduct within the same charged time-frame, the possibility that a jury may convict based on different underlying acts presents the danger that a jury, in finding the defendant guilty, has done so without unanimously agreeing on a specific instance of criminal conduct. *See e.g., Celis-Garcia*, 344 S.W.3d at 154-59.

For example, in *Celis-Garcia*, the defendant was charged with two counts of statutory sodomy. *Id.* at 152. At trial, the alleged victims testified regarding multiple acts [3] of sexual abuse occurring in multiple

---

**3.** The State's argument that this is not actually a "multiple acts" case is unpersuasive. In *Celis-Garcia*, the Court explained that

[a] multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a

criminal charge, but the defendant is charged with those acts in a single count. [75B Am.Jur. 2D Trial § 1511.] To determine if a case is a multiple acts case, courts consider the following factors: "(1) whether the acts occur at or near the same time; (2)

locations inside their home. *Id.* at 153. The State submitted verdict directors for each count that told the jury that if they believed the defendant had committed statutory sodomy within a date range, then they should find the defendant guilty. *Id.* at 154-55. The verdict directors for each count contained no additional information, such as location, that would allow the jury to distinguish between the multiple claims of sexual abuse described by the victims within the charged timeframe. *Id.* at 154-55.

The Supreme Court vacated the convictions because they violated the State's constitutional requirement of jury unanimity. *Id.* at 158-59. In doing so, the Court explained:

> Despite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted [the defendant] of the same act or acts.... This broad language allowed each individual juror to determine which incident he or she would consider in finding [the defendant] guilty of statutory sodomy. Under the instructions, the jurors could convict [the defendant] if they found that she engaged or assisted in hand-to-genital contact with the chil-

dren during an incident in her bedroom, *or* on the enclosed porch, *or* in the shed, *or* in the bathroom.

*Id.* at 156 (emphasis in original). The Court found that because there was evidence of multiple incidents of abuse within the timeframe that would have supported the charges, it was "impossible to determine whether the jury unanimously agreed on any one of these separate incidents." *Id.* at 158. The defendant's right to a unanimous jury verdict was, therefore, violated. *Id.* The Court, reviewing for plain error, vacated the convictions because it found the error misdirected the jury and affected the verdict, resulting in manifest injustice. *Id.* at 159.

The Court in *Celis-Garcia* suggested two ways to address the unanimity problem in cases regarding multiple acts. It stated that

> a defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred.

---

whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 344 S.W.3d at 155-56 (quoting 75B Am.Jur. 2D Trial § 1511). The State argues that this is not a "multiple acts case" because *the record* provides no basis to distinguish between the acts of child molestation claimed by the victim. We disagree. Whether a case is one involving "multiple acts" cannot be based on the quality of the testimony or evidence but on the charged offense and the nature of the criminal conduct itself. Here, there are allegations of repeated identical yet distinct instanc-

es of abuse. Each repeated offense is unconnected to the last and is not like a course of conduct in which multiple acts could not be distinguished. *Cf., State v. Unruh*, 281 Kan. 520, 133 P.3d 35, 41-42 (2006) (manufacturing of methamphetamine was a course of conduct that could not be separated into factually distinct acts and not a "multiple acts case"). As here, where the victim testifies to multiple instances of abuse and each of which could constitute the underlying criminal act in the instructions submitted to the jury, it is a multiple act case that requires, as set forth in the body of the opinion, measures to ensure that the jury in convicting the defendant has done so unanimously agreeing on the same underlying criminal act.

*Id.* at 157. The State in *Celis-Garcia* argued that "requiring the state to differentiate between multiple acts would make it impossible to prosecute sexual abuse cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts." *Id.* at 157 n.8. The Court did not address this objection because under the facts of *Celis-Garcia* the various acts could be distinguished by location. *Id.*

The facts of this case present the scenario the Supreme Court declined to address in *Celis-Garcia*—sexual abuse of a minor with repeated, independent, identical acts of sexual abuse committed in the same location over a duration of time. It appears the State attempted to elect two instances of criminal conduct to support the charges—the first instance and last instance of abuse A.E. could remember. The State explained this to the jury in closing argument but did not identify such in the verdict directing instructions given to the jury. Unfortunately, the State's clarification of the acts they were charging in closing argument cannot cure the failure of the State to specify in the jury instructions the two instances of conduct to support the charges as we must presume that the jury followed the jury instructions as written not the State's closing argument. *See State v. Riley*, 440 S.W.3d 561, 567–68 (Mo. App. E.D. 2014) (rejecting claim that prosecutor's statements in closing argument violated defendant's right to a unanimous jury verdict because the jury instruction was proper and jurors are presumed to follow the instructions); *see also State v. Rycraw*, 507 S.W.3d 47, 63–64 (Mo. App. E.D. 2016) (we must presume the jury

followed the trial court's instructions and not the prosecutor's closing arguments).

The instructions' failure to specify the acts of abuse supporting each count could have allowed the jury to convict Escobar based on different underlying criminal acts for the same count. Had the State set forth in the verdict director itself that the underlying acts charged were the first and last instances of abuse A.E. remembered, it would have likely complied with the Court's guidance in *Celis-Garcia* and protected Escobar's right to a unanimous jury verdict. We find that the trial court erred in failing to submit to the jury verdict directors sufficiently describing the underlying criminal acts charged in order to ensure that the jury would be unanimous as to the criminal act.

However, under plain error review, Escobar must also show that the trial court's error resulted in manifest injustice or a miscarriage of justice, thereby warranting reversal. *Celis-Garcia*, 344 S.W.3d at 158. The question is, therefore, whether the error affected the verdict. *Id.* at 154; *see also Hunt*, 451 S.W.3d at 260. Relevant, but not determinative to this inquiry, is the nature of the defense mounted by Escobar at trial.[4] *See Hoeber*, 488 S.W.3d at 656-57. In *Celis-Garcia*, the Supreme Court in finding prejudice found relevant that the defendant "relied on evidentiary inconsistencies and factual improbabilities respecting each allegation of hand-to-genital contact," which made it "more likely that individual jurors convicted her on the basis of different acts." *Celis–Garcia*, 344 S.W.3d at 159. As explained by the Court in *Hoeber*, however, while the nature of the defense is relevant, a defendant who lodges a general defense rather than an

---

4. Escobar makes no argument that, had the verdict directors been drafted to properly identify the specific acts charged, his defense would have been different or that he was denied any additional defenses which he desired to use due to the lack of specificity in the verdict directors.

incident-specific offense may still be prejudiced. 488 S.W.3d at 657. In *Hoeber*, "the jury heard conflicting statements about multiple incidents of hand-to-genital contact. The state's case was not focused on or limited to any specific acts or incidents of sexual abuse. Rather, the state argued that Mr. Hoeber had abused S.M. multiple times and at least on two occasions." *Id.* The Court found the defendant had been prejudiced by his trial counsel's failure to object to the verdict directors. The Court reasoned as follows:

> Because there was evidence of multiple, separate incidents of statutory sodomy, any of which would have supported the charged offenses, and neither verdict director specified a particular act or incident, there was no requirement that jurors agree on the same act to find Mr. Hoeber guilty on either count of statutory sodomy. The verdict directors, therefore, created a real risk that the jury verdicts were not unanimous.

*Id.* at 657-58. Unlike *Hoeber*, in this case there were no substantial "conflicting statements" by A.E. regarding the abuse and the State did focus at trial and in closing argument on two specific instances of abuse. In addition, the standard to establish prejudice in *Hoeber* was "somewhat lower" than the standard required to establish plain error, as Hoeber was making an ineffective assistance of counsel claim. *Id.* at 657.

Escobar did not establish, under the circumstances of this case, that the trial court's error in instructing the jury affected the verdict. As explained above, A.E. testified generally to repeated acts of molestation in her bedroom beginning in approximately November of 2012 and ending in April of 2013. While A.E. did testify generally to an identical pattern of abuse occurring over approximately six months, the State inquired specifically into only two instances of abuse. The State focused its inquiry and its evidence on these two instances. The State asked A.E. about the first time she could remember the sexual abuse occurring. Although she could not remember the date, she was able to recall that the abuse did not begin until after she had gotten a new bunk bed around her birthday in November of 2012. The State also specifically inquired about the final instance of abuse A.E. could remember, which A.E. recalled occurred in April of 2013, around the time Escobar's sons moved from Mexico to live with the family. The State in closing argument explained that Count I was for the first incident of abuse A.E. could remember[5] and Count II was for the final instance she could remember.[6]

In this case, Escobar did not present an incident-specific defense but rather gener-

---

5. The State argued with respect to Count I:

 Now in count one, we are talking about the first incident that [A.E.] can remember. And we know that that is the range of dates, November 1st, 2012 through February 1st, 2013. We know that that first incident occurred within that range because she told you that it first happened when she got that new bunk-bed because when she got that bunk-bed, the lower bunk was larger than the upper bunk and that is the first place that she remembers being sexually abused.

6. The State argued with respect to Count II:

 Now count two has all of the same elements. This is the same offense. The difference in count two is that this is the last incident that she can tell you about. She told you that the last time that she can remember her father coming into her room, groping her breasts underneath her clothing, sliding his hand down along her stomach, underpants, between her legs, was in April of 2013. And she knows it was April 2013 because that is when his other sons came up from Mexico and she knows that it happened one time after they came up from Mexico.

ally denied all of the allegations as a whole and argued A.E. had fabricated her story because she wanted her mother to leave Escobar. There was no conflicting evidence presented by Escobar to contest A.E.'s allegations other than a general denial that any of the abuse had occurred. Escobar presented no incident specific evidence to contest either of the two specifically described instances of abuse—the first and last acts of abuse A.E. could remember. The members of the jury had to decide whether they found A.E.'s testimony credible, and Escobar's convictions show that they did so. Given the totality of the circumstances, the nature of A.E.'s testimony, and Escobar's defense, there is no reasonable argument that the alleged error affected the verdict.[7]

Therefore, we find that Escobar has failed to meet his burden to prove manifest injustice or a miscarriage of justice warranting reversal under our standard of review.

Points One and Two are denied.

### Point Three

In Point Three, Escobar argues that the trial court also erred by failing to *sua sponte* draft and give to the jury a "unanimity instruction" in that, according to Escobar, in a multiple acts case there must be an instruction informing the jury that they must agree on a specific act to find the defendant guilty of a charge.[8]

As explained above, the Supreme Court in *Celis-Garcia* provided two suggested approaches that the State could take in a multiple acts case. The Supreme Court explained:

> a defendant's right to a unanimous verdict would be protected in a multiple acts case by *either* the state (1) electing the particular criminal act on which it will rely to support the charge *or* (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred.

*Celis-Garcia*, 344 S.W.3d at 157 (emphasis added). The Supreme Court's use of "either" and "or" provides that a unanimity instruction is only required if the State utilizes the second option by electing to describe in one verdict director multiple

**7.** During deliberations the jury sent a question to the court which read, "Why 2 counts? Why isn't everything lumped together?" Escobar argues that because the jury inquired of the court during deliberations why there were two counts charged that this means the jurors did not understand they had to agree unanimously on the specific underlying criminal acts. We think Escobar reads too much into the question. The evidence presented at trial was that Escobar abused A.E. over a period of six months. The State brought two charges. The jury's inquiry could be directed at why the State did not bring additional charges. The Court instructed the jury to be guided by the instructions and the evidence as they remembered it. The instructions specified two different timeframes for abuse to distinguish between the counts, and the evidence at trial elicited specific evidence as to only two instances of abuse. We do not believe it would be proper to read into this question that the jury believed they could lump together all the abuse without agreeing unanimously on the underlying criminal acts, particularly under plain error review. Escobar also makes a perplexing argument that a verdict-director for a lesser-included offense that incorrectly referenced the greater offense suggested to the jury that they could lump together the offenses. This argument is entirely speculative and unpersuasive.

**8.** Escobar is not referencing MAI-CR 3d 203.05, which provides that the jury's verdict, "whether guilty or not, must be agreed to by each juror." MAI–CR 3d 302.05. Rather, he is arguing a non-MAI instruction should have been given specifically setting forth that each juror must agree on an underlying specific criminal act to find him guilty.

and distinct criminal acts, each of which could separately support the crime charged. If the State elects this route, the jury must be provided an instruction explaining that they must agree unanimously that at least one of the criminal acts occurred. *Id.* In this case, as the State attempted to elect route one by selecting two specific instances of criminal conduct to support the charges, no unanimity instruction would have been *required.* That is not to suggest that giving a unanimity instruction would not have been a better practice.

However, assuming *arguendo* that a unanimity instruction was required and the trial court erred by failing to provide one, Escobar would still have to prove that the error resulted in manifest injustice or a miscarriage of justice, thereby warranting reversal. *Celis-Garcia,* 344 S.W.3d at 158. The arguments regarding prejudice for this claimed error are identical to the arguments addressed in Points One and Two on appeal. For the same reasons, we also find that even if the trial court did err in failing to give a unanimity instruction, Escobar has failed to meet his burden to prove manifest injustice or a miscarriage of justice warranting reversal under our standard of review has occurred.

Point Three is denied.

## Points Four and Five

In Points Four and Five on appeal, Escobar argues the trial court plainly erred when it instructed the jury with a verdict director on first-degree child molestation for Count I (Point Four) and Count II (Point Five) that omitted the essential element that the jury was required to find that A.E. was a female before it could convict Escobar of first-degree child molestation for touching A.E.'s breast.

Section 566.067.1 provides that first-degree child molestation occurs where "[a] person ... subjects another person who is less than fourteen years of age to sexual contact." "Sexual contact" is defined by section 566.010 as "any touching of another person with the genitals or any touching of the genitals or anus of another person, *or the breast of a female person,* or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person" (emphasis added).

The verdict directors submitted to the jury on Counts I and II required only that the jury find that Escobar "touched the breast of A.E." Escobar argues that the jury was never required to find that A.E. was female and, therefore, never required to find all the essential elements of the crime.

"A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged." [*State v. Zetina–Torres,* 482 S.W.3d 801, 811 (Mo. banc 2016) (internal quotation omitted).] "A violation of due process arises when an instruction relieves the State of its burden of proving each and every element of the crime and allows the State to obtain a conviction without the jury deliberating on and determining any contested elements of that crime." *Id.* (internal quotation omitted). "Plain error exists when an instruction omits an essential element and the evidence establishing the omitted element was seriously disputed." *Id.* (internal quotation omitted)

*State v. Berry,* 506 S.W.3d 357, 362 (Mo. App. W.D. 2016).

Escobar argues that the "seriously disputed" standard is no longer tenable in light of *State v. Jackson,* 433 S.W.3d 390, 406 (Mo. banc 2014) and *State v. Pierce,* 433 S.W.3d 424, 432 (Mo. banc 2014). This argument was considered and denied by this Court in *State v. Berry,* in which we found that we are constitutionally bound to

follow the Missouri Supreme Court's most recent controlling decision on an issue. 506 S.W.3d at 362 n.5. The most recent controlling Supreme Court decision applies the "seriously disputed" standard, and we are required to follow that decision. *See Zetina-Torres,* 482 S.W.3d at 811.

Escobar concedes that if the "seriously disputed" standard still applies, his claim must fail. We agree. The pattern instruction for submitting the crime of first-degree child molestation under section 566.060 is contained in MAI-CR 3d 320.17. The instruction in the first paragraph submits the elements for "sexual contact," including the option that the defendant "[1] touched the (genitals) (or) (anus) *(or) (breast) of [name of victim]* (through the clothing)" (emphasis added). Rule 28.02(c) provides that "[w]henever there is an MAI-CR instruction or verdict form applicable under the law and Notes On Use, the MAI-CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." The verdict form submitted to the jury complied with the pattern instruction. Further, it was never disputed at trial that A.E. was female. A.E. was referred to as a female throughout trial and testified in front of the jury.

Accordingly, we conclude that the circuit court has not so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted. *See Hunt,* 451 S.W.3d at 260.

Points Four and Five are denied.

### Conclusion

The judgment of the circuit court is affirmed.

All concur