

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | WD81001 |
| | ) | |
| | ) | Opinion filed:  April 30, 2019 |
| MARK ANTHONY POWELL, | ) | |
| | ) | |
| Appellant | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE SANDRA MIDKIFF, JUDGE**

Before Division One:  Cynthia L. Martin, Presiding Judge,
Victor C. Howard, Judge and Thomas H. Newton, Judge

Mark Powell appeals his convictions following a jury trial for statutory sodomy in the first degree, section 566.062, and child molestation in the first degree, section 566.067.[1]  He raises six points on appeal regarding the introduction of evidence, prosecutorial misconduct, and submission of the verdict directors.  The conviction for statutory sodomy in the first degree is affirmed pursuant to Rule 30.25(b).  Because a published opinion related thereto would have no precedential value, a memorandum explaining the reasons for the decision has been provided to the parties.  The conviction for child molestation in the first degree is reversed, and the case is remanded.  This opinion addresses only point five, which is dispositive regarding the child molestation conviction.

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

## Factual and Procedural Background

The victim, Z.G. (Victim), who was born in February 2006, is Powell's nephew. Powell's younger half-sister is Victim's mother (Mother). At the end of 2013 and into early 2014, Powell lived with Mother, Victim, and Victim's siblings in Mother's residence. While he was living there, Powell struck Victim in the chest so hard that Mother took Victim to the emergency room to make sure he was okay. Powell told Mother that he struck Victim when he became upset that Victim and his brother were fighting. Powell moved to his own home on Wabash in Kansas City in February 2014.

Later that month, Mother lost her residence, and Powell offered to let Mother's sons, Victim, who had just turned eight-years-old, and his two younger brothers, live with him. Mother stayed in a hotel but telephoned her sons daily and visited them multiple times per week. In May 2014, Mother got an apartment, and her sons resumed living with her.

Nearly a year later in April 2015, Mother's sister told her that Victim's brother, who was six years younger than Victim, had touched her inappropriately after she fell asleep. Mother asked Victim's brother why he did that, and his brother said that Victim sometimes touches him in the bathroom. Mother saw Victim lingering in the hallway listening to the conversation, and she asked Victim if anyone had touched him the "wrong way." Victim would not answer, but after Mother repeatedly asked him if anybody had touched him, he started shaking and crying and told her that Powell had rubbed him all over his body and rubbed on his "private area." He also told Mother that Powell had threatened to hurt or kill him, including beating him to death with a belt, if he told anybody about the touching. Powell had recently been incarcerated when Victim made the disclosure to Mother.

After Mother reported Victim's disclosure to the police, she took Victim for a recorded forensic interview at the Child Protection Center (CPC). Victim told the interviewer that Powell had touched him all over his body, including his "private parts;" he said that all of the touching occurred at Powell's "white house" on Wabash. Victim stated that Powell told him that if he told anybody about the touching, he would punch Victim with all his might and hit him with the metal part of a belt.

Victim said Powell would come into the bathroom when Victim's clothes were off for a shower or bath, and Powell would rub his "ding-a-ling" with his hand. He said Powell also touched his "ding-a-ling" and "nuts" while putting cocoa butter lotion on Victim in Powell's bedroom. Victim said that the first time Powell touched him was in the bathroom while Victim was taking a shower or bath. Powell came into the bathroom and rubbed Victim's "ding-ding" with his hand. The last time Powell touched him was in the bathroom while he was taking a bath. Powell touched Victim's "ding-ding" and "nuts," asked Victim why his "nuts" were so shiny, and then kissed Victim's "ding-a-ling." When the interviewer asked if there were any other times that Powell had "kissed your ding-ding", Victim responded, "no, that was the only time."

Powell was charged as a persistent offender with one count of first-degree statutory sodomy and one count of first-degree child molestation.

At trial, Victim testified that while he was staying at Powell's home, Powell would "touch on me" and "wash me up inappropriately." He said that Powell had touched his "ding-a-ling" more than once either in the shower or upstairs in Powell's bedroom. Victim described the first time that Powell had touched him. He said that he was taking a shower and Powell came into the bathroom, opened the shower curtain, and said "let me wash you up." Victim said that Powell began to wash "all over my private part" or "ding-a-ling" with his hand. Victim was crying

because "it didn't feel comfortable or right." Victim described another incident that occurred in Powell's bedroom after the first shower incident. He said Powell told him to take off his underwear and then put cocoa butter lotion on his hand and rubbed his "private part" or "ding-a-ling" "all nasty" and in "sexual" way. Finally, Victim described another occasion in Powell's bedroom where Powell was putting lotion on him and he kissed him on his "private part."

Victim said that Powell warned him on multiple occasions that if he told anyone about the touching, he would punch him with all his might and whip him with the metal part of a belt. Victim said he didn't tell his mother about what Powell was doing because he was scared Powell was going to beat him. He testified that when he was living with Powell, he saw him with guns, saw him shooting guns, and saw him beat up or hurt other people.

Powell testified in his own defense and denied that he ever inappropriately touched Victim.

The jury found Powell guilty as charged, and the court later imposed consecutive sentences of life imprisonment for first-degree statutory sodomy and fifteen years for first-degree child molestation. This appeal by Powell followed.

## Submission of Verdict Director for Child Molestation in the First Degree

In point six, Powell asserts that the trial court plainly erred in submitting Instruction 14, the verdict director for child molestation in the first degree. He contends that the verdict director violated his right to a unanimous jury verdict because in this multiple acts case, it allowed the jury to find him guilty of the charge without unanimously agreeing on a specific incident of abuse. Powell concedes that he failed to object to the instruction at trial. Review is for plain error only.

Rule 30.20 provide that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." Plain error review involves a two-step process. *State v. Baumruk*, 280 S.W.3d

4

600, 607 (Mo. banc 2009). First, the court determines whether the claim of error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* (internal quotes and citation omitted). All prejudicial error is not plain error; plain errors are those that are evident, obvious, and clear. *Id.* If plain error is found, the court next determines whether the claimed error resulted in manifest injustice or a miscarriage of justice. *Id.* at 607-08. "For instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict." *State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011)(internal quotes and citation omitted).

The Missouri Constitution requires that a jury verdict in a criminal case be unanimous. MO. CONST. art I, § 22(a). "For a jury verdict to be unanimous, the jurors must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." *Celis-Garcia*, 344 S.W.3d at 155 (internal quotes and citation omitted). The jury unanimity issue arises in "multiple acts" cases. *Id.* "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id.* at 155-56.

In *Celis-Garcia*, the minor victims in the case testified regarding multiple acts of statutory sodomy occurring in multiple locations inside their home. *Id.* at 156. The verdict directors (one for each victim) allowed the jury to find the defendant guilty of first-degree statutory sodomy if they believed "'that between [specified dates]…the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals….'" *Id.* The Missouri Supreme Court found that "[d]espite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted [the defendant] of the same act or acts." *Id.* The Court explained:

5

> This broad language allowed each individual juror to determine which incident he or she would consider in finding [the defendant] guilty of statutory sodomy. Under the instructions, the jurors could convict [the defendant] if they found that she engaged or assisted in hand-to-genital contact with the children during an incident in her bedroom, *or* on the enclosed porch, *or* in the shed, *or* in the bathroom.

*Id.* Thus, Court held that the defendant's right to a unanimous jury verdict was violated when the verdict directors permitted the jury to convict without identifying the acts the jurors were to agree she committed. *Id.* at 158. The Court ruled that in multiple acts cases, the defendant's right to a unanimous verdict would be protected by either (1) the State electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and instructing the jury that it must agree unanimously that at least one of those acts occurred. *Id.* at 157.

Count II charged Powell with first-degree child molestation and alleged that he subjected Victim to sexual contact by rubbing Victim's penis. The verdict director for Count II, Instruction 14, provided in pertinent part:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about or between February 1, 2014 and June 1, 2014, in the County of Jackson, State of Missouri, the defendant touched the genitals of [Victim], and
>
> Second, that defendant did so for the purpose of arousing or gratifying defendant's own sexual desire, and
>
> Third, that [Victim] was a child less than fourteen years old,
>
> then you will find the defendant guilty under Count II of child molestation in the first degree.

During the CPC interview, Victim reported that Powell had touched his "private parts" at his "white house" on Wabash. He said Powell would come into the bathroom when Victim's clothes were off for a shower or bath, and Powell would rub his "ding-a-ling" with his hand. He

6

said Powell also touched his "ding-a-ling" and "nuts" while putting cocoa butter lotion on Victim in Powell's bedroom. Victim said that the first time Powell touched him was in the bathroom while Victim was taking a shower or bath. Powell came into the bathroom and rubbed Victim's "ding-ding" with his hand. The last time Powell touched him was in the bathroom while he was taking a bath. Powell touched Victim's "ding-ding" and "nuts," asked Victim why is "nuts" were so shiny, and then kissed Victim's "ding-a-ling." At trial, Victim testified that while he was staying at Powell's home, Powell had touched his "ding-a-ling" more than once either in the shower or upstairs in Powell's bedroom. In describing the first time that Powell had touched him, he said that he was taking a shower and Powell came into the bathroom, opened the shower curtain, and said "let me wash you up." Victim said that Powell began to wash "all over my private part" or "ding-a-ling" with his hand. Victim was crying because "it didn't feel comfortable or right." Victim then described another incident that occurred in Powell's bedroom after the first shower incident. He said Powell told him to take off his underwear and then put cocoa butter lotion on his hand and rubbed his "private part" or "ding-a-ling" "all nasty" and in "sexual" way.

The evidence demonstrated at least two specific incidents of Powell touching Victim's genitals—one in the bathroom while Victim was showering/bathing and one in Powell's bedroom when he was putting lotion on Victim. Despite this evidence of multiple, separate incidents of child molestation, the verdict director failed to differentiate between the separate acts in a way that ensured the jury unanimously convicted Powell of the same act. The verdict director allowed the jury to find Powell guilty of first-degree child molestation if it believed that "between February 1, 2014 and June 1, 2014…the defendant touched the genitals of [Victim]…." This broad language permitted each individual juror to determine which incident he or she would consider in finding Powell guilty. Under the instruction, the jurors could convict Powell if they found that he touched

Victim's genitals during an incident in the bathroom *or* in Powell's bedroom. Because the verdict director failed to sufficiently identify the act the jurors were to agree he committed, it violated Powell's constitutional right to a unanimous jury verdict and was, on its face, plainly erroneous. *Beck*, 557 S.W.3d at 417.

Having determined that the verdict director for Count II was plainly erroneous, it is necessary to determine whether that error resulted in manifest injustice or a miscarriage of justice warranting reversal. *Celis-Garcia*, 344 S.W.3d at 158; *State v. Beck*, 557 S.W.3d 408, 418 (Mo. App. W.D. 2018). Citing *State v. Escobar*, 523 S.W.3d 545 (Mo. App. W.D. 2017), the State argues that Powell did not suffer manifest injustice because his defense was that Victim completely fabricated the allegations and had motive to lie to avoid getting in trouble with his mother. In *Escobar*, the State submitted verdict directors for two counts of first-degree child molestation based on the identical allegation that the defendant touched the victim's breast. *Id.* at 547-48. One count alleged that the act occurred between November 1, 2012, and February 1, 2013, and the other count alleged that the act occurred between February 2, 2013, and April 30, 2013. *Id.* at 548. The victim testified at trial to repeated, identical acts of abusing occurring between November 1, 2012, and April 30, 2013, but the State elicited specific evidence about only the first act and the last act that the victim could remember. *Id*. at 552. This court determined that the trial court erred in failing to submit verdict directors "sufficiently describing the underlying criminal acts charged in order to ensure that the jury would be unanimous as to the criminal act" but that the defendant failed to prove manifest injustice or a miscarriage of justice. *Id.* at 551. Specifically, the court found that the defendant did not show that the instructional error affected the verdict because there was specific evidence about only two acts of abuse—one for each count—and the defendant did not present an incident-specific defense but rather generally denied all of the allegations as a whole

8

and argued that the victim had fabricated the story because she wanted her mother to leave the defendant. *Id.* at 552-53.

Like in *Escobar*, Powell did not present an incident-specific defense but generally denied that any abuse occurred. While the nature of the defense is relevant, it is not determinative to the plain error inquiry. *Id.* at 551 (citing *Hoeber v. State*, 488 S.W.3d 648, 657 (Mo. banc 2016)). Unlike in *Escobar*, the State did not focus on only one specific instance of abuse to prove the one count of child molestation. Rather, evidence was presented showing at least two incidents where Powell touched Victim's genitals. In both Victim's interview and trial testimony, he specifically described the first time Powell touched him in the bathroom while he was in the bathing. In his interview, Victim also generally reported that Powell touched him while putting cocoa butter lotion on him in Powell's bedroom. At trial, he described a specific incident of touching in the bedroom with lotion. From this evidence, the jurors could have relied on different acts to find Powell guilty of child molestation. The verdict director for Count II misdirected the jury in a way that affected the verdict and denied Powell his constitutional right to a unanimous jury. His conviction for first-degree child molestation is reversed. He is entitled to a new trial on that charge. Point six is granted.

## Conclusion

Powell's conviction on Count II for first-degree child molestation is reversed, and the case is remanded.

_____
VICTOR C. HOWARD, JUDGE

All concur.