

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | WD83458 |
| v. | ) | |
| | ) | |
| CANDY M. PHILLIPS, | ) | FILED: October 12, 2021 |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
### THE HONORABLE PATRICK K. ROBB, JUDGE

### BEFORE DIVISION ONE: ALOK AHUJA, PRESIDING JUDGE, LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

Candy Phillips appeals from her conviction of two counts of stealing. Phillips contends the circuit court erred in admitting hearsay evidence because the State failed to lay an adequate foundation under the business records exception. Phillips also contends the circuit court erred in submitting a jury instruction that violated her due process rights. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Phillips was previously employed as the property manager of the Chatsworth Apartments ("Chatsworth"). Robert Jenkins ("Father") was a part-owner of Chatsworth, and his son, Trevor Jenkins ("Son"), managed payroll. While Son has no ownership interest in Chatsworth, Father and Son

communicated often about Chatsworth's business and Son estimated that he visited Chatsworth for business purposes around once a quarter. Son owns other, separate, apartment complexes and is familiar with general apartment management.

In the summer of 2017, Chatsworth was underperforming financially, so, on July 13, 2017, Father and Son agreed to visit the property and review it for shortcomings. After surveying the building for maintenance and repair purposes, they entered Phillips's office and asked her to print a report of rents paid and owed. Phillips logged into Chatsworth's logistics program, Property Boss, and printed the report. Upon review, Father and Son found that, according to the report, large amounts of rent owed from various tenants were reported as unpaid and were written-off as discounts or concessions. Phillips admitted to altering the record of one tenant for Father's benefit. Father and Son decided to reconvene with Phillips the next morning to take a deeper look at Chatsworth's financial situation and to decide on the appropriate course of action. The next morning, on July 14, 2017, Father and Son met in Phillips's office, but Phillips did not show. Son eventually gained access to Property Boss on Phillips's computer and printed a report of rents owed and received. After an investigation, the State charged Phillips with two counts of stealing based on the missing rent money.

At trial, the State sought to admit the July 14, 2017 reports that Son had generated under the business records exception to the rule against hearsay

2

enumerated in Section 490.680.[1]  As foundation for the evidence, Son testified that he was aware that Property Boss was used at Chatsworth as the record keeping software; that he had witnessed Phillips access and generate a report from Property Boss on July 13, 2017; that he generated the report to be admitted into evidence on July 14, 2017; that Phillips was responsible for record keeping at Chatsworth; and that Property Boss should be timely updated with new rents received as part of the ordinary course of business at Chatsworth.  The circuit court admitted the evidence on this foundation.

After the close of evidence, the court submitted a jury instruction on Count II, which read, in relevant part, that, "on or between February 1, 2017 and July 1, 2017," Phillips met the elements for the conviction of stealing under Section 570.030.  The jury convicted Phillips of both counts of stealing, and the court sentenced her to respective four-year and three-year prison terms, to run consecutively.  Phillips appeals.

## ANALYSIS

In her first two points on appeal, Phillips contends the circuit court erred in admitting into evidence the reports that Son pulled from Property Boss on July 14, 2017.  Phillips contends that the reports are inadmissible hearsay and do not fall under the business records exception.  Specifically, she argues that the State failed to lay an adequate foundation that Son was an "other qualified witness" to

---

[1] All statutory references are to the Revised Statutes of Missouri 2016.

3

give the evidence probity and that Property Boss was updated in the ordinary course of business.

We review the circuit court's decision regarding the admissibility of evidence for an abuse of discretion. *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015). "The court abuses its discretion only if its decision is 'clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Id*. (quoting *Mitchell v. Kardesch,* 313 S.W.3d 667, 675 (Mo. banc 2010)). "Evidentiary error is reviewed 'for prejudice, not mere error,' and error is only prejudicial if the court's error affected the outcome of the trial with 'reasonable probability' and deprived the defendant of a fair trial." *Id*. (quoting *State v. Clark,* 364 S.W.3d 540, 544 (Mo. banc 2012)). "We review the evidence presented at trial in the light most favorable to the verdict." *State v. Johns*, 34 S.W.3d 93, 103 (Mo. banc 2000).

Hearsay is an out of court statement admitted to prove the truth of the matter asserted. *State v. Douglas*, 131 S.W.3d 818, 823 (Mo. App. 2004). "Not all out-of-court statements are hearsay in that to constitute hearsay the statement must be offered for the truth of the matter asserted." *Id*. "Thus, an out-of-court statement that is not offered for the truth of the matter asserted is not hearsay and is, therefore, admissible even though it does not fall within a recognized exception." *Id*. at 823-24. One such exception is the business records exception, where a hearsay business record may be admitted when:

4

the custodian or other qualified witness testifies to [the record's] identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

§ 490.680.

Here, Phillips's statement, the Property Boss records, were not admitted to prove their truth. Specifically, the reports indicate that various tenants at various times failed to pay rent, but received credits or discounts on their rent totals to balance the ledger. The State did not admit the reports to prove that the various tenants actually failed to pay rent and instead received credits and discounts, but rather to demonstrate Phillips's consciousness of guilt in that she altered the ledger to conceal her thefts. Because the records are not hearsay, they are admissible as general statements by Phillips that are clearly relevant to the principal issue of the case. As a result, the business records exception need not apply at all, and the court did not err in admitting the Property Boss reports.

Even if the Property Boss reports were hearsay statements, they were properly admitted under the business records exception. First, Phillips contends that Son was not an "other qualified witness" who could lay adequate foundation for the record's admission. To be an "other qualified witness," a witness need not be employed at the time the record's creation or have "personal knowledge of their origins." *In re Estate of Newman*, 58 S.W.3d 640, 647 (Mo. App. 2001). Rather, "[a]ll that is required under the statute as to the sponsoring witness is that he or she has 'sufficient knowledge of the business operation and methods of

5

keeping records of the business to give the records probity.'" *Id.* (quoting *Estate of West v. Moffatt*, 32 S.W.3d 648, 653 (Mo. App. 2000)).

Phillips contends Son was not an "other qualified witness" because: (1) he was not an owner of Chatsworth, (2) he was not familiar with Property Boss specifically, and (3) he had never accessed Property Boss prior to the events of this case. Phillips argues that Son lacked sufficient knowledge of the business and Property Boss to give the records probity. To support this argument, he relies on *CACH, LLC v. Askew*, 358 S.W.3d 58, 64 (Mo. banc 2012), in which our Supreme Court found that a witness lacked sufficient knowledge to give probity when she neither worked for the business whose records were to be admitted nor had any tangible connections to the business that would give her cause to know when or how the records were prepared. Phillips insists that, because Son was not employed by Chatsworth and was not specifically familiar with Property Boss, he could not know when and how the records were entered.

The record demonstrates that Son has far more knowledge about the business at issue than the witness in *CACH*, however. First, Son has a direct connection to the business, as he manages Chatsworth's payroll. Second, he and Father, who owns Chatsworth, discuss the business at Chatsworth frequently during their daily phone calls. Indeed, Son was so involved with Chatsworth that he personally examined the physical condition of the property and assessed its financial shortcomings with Father. Additionally, Son has ample experience in the field, as he owns his own apartment complexes, where he utilizes a record

6

keeping program similar to Property Boss. Therefore, we do not find *CACH*

dispositive and do not find that the circuit court abused its discretion in finding

that Son was an "other qualified witness."

Phillips next argues that Son merely testified as to how Chatsworth's

property managers "should" keep financial records near in time to recordable

events occurring but did not testify specifically as to the actual mode and manner

of record keeping at Chatsworth. Phillip's argument relies on the following direct

examination of Son:

> Q. Mr. Jenkins, I would like to continue discussing with you Property Boss and the lease statements, payment history. So you had previously testified that you were familiar with Property Boss and software similar to it; correct?
>
> A. I'm familiar with the statements generated by it.
>
> Q. Okay. And would it be part - - are you aware whether or not it's part of the duties of a property manager to record rent payments and keep track of people's payment histories?
>
> A. That's one of the primary duties.
>
> Q. That's one of the primary duties. Okay. And is this - - and is it - - this information generally recorded at the time in the software or is that how it should be done.
>
> A. That is how it should be done.
>
> Q. Okay. And you already said this would be part of their regular duties as a property manager; correct?
>
> A. Yes.
>
> Q. Okay. And you indicated that you printed out these

lease statement - - lease statement payment histories?

A. Yes, sir.

Q. So they could be reduced to writing?

A. Yes, sir.

Q. Okay. I had previously shown you State's Exhibits 1, 2, 6, and 7. I also would like to show you State's Exhibit 5 if you could take a moment and - -

. . .

Q. Do you recognize those?

A. I recognize the lease statements.

Q. Okay. And how do you recognize them?

A. They are the lease statements I printed off.

Q. Okay. From the computer at Chatsworth?

A. Yes.

Q. Okay. And same computer that you saw the defendant working on?

A. Yes.

Q. All right. From the software that you saw her working on?

A. Yes.

Q. Okay. And those are generated by Property Boss?

A. Yes.

Q. Okay. The software that's used in the regular course of business to record people's payment history?

8

A. Yes.

Given the sufficient connections to Chatsworth that Son had previously demonstrated, and viewing the evidence in the light most favorable to the verdict, it is not clearly against the logic of the circumstances that the circuit court interpreted Son's statement, "[t]hat is how it should be done," as testimony of Chatsworth's specific business practice of recording payments at the time they occur as opposed to interpreting it as a general statement applicable to all apartment complexes, as Phillips contends.[2]

In addition, Phillips argues that the records lack the requisite earmarks of reliability. Because the State argued at trial that Phillips had altered or erroneously compiled the records, Phillips argues that the State may not rely on their accuracy for purposes of admission. This argument ignores that the factors for the admission of business records in Section 490.680 traditionally demonstrate reliability by themselves. *See Goodloe v. Director of Revenue*, 838 S.W.2d 506, 508 (Mo. App. 1992) ("[Section 490.680] requires the establishment of a 'foundation' consisting of testimony by the custodian of the records or 'other qualified witness' as to the identity of the records *and as to other factors designed to show the reliability of the records.*") Thus, the State need not demonstrate that the records were unaltered to show reliability; rather, merely meeting the requirements for admission also traditionally demonstrates that the records are

---

[2] Phillips reasserts this same unpersuasive argument in her second point, where she contends that the circuit court abused its discretion in admitting the records because Son did not establish that they were kept in the ordinary course of business.

accurate representations of what was recorded in the ordinary course of business—inconsistencies included.

We find that the State demonstrated adequate reliability of the July 14, 2017 reports through Son's testimony that he had knowledge of the business, that Phillips was responsible for record keeping, and, as we found above, that she kept the records, inconsistencies included, in the ordinary course of business. Son further testified that the records were recovered from Phillips's computer in the password protected program that was not installed elsewhere. Son had also witnessed Phillips using the same computer and program to generate the reports the day before. The circuit court did not abuse its discretion in admitting the Property Boss records. We deny Points I and II.

In her final point, Phillips contends the circuit court committed plain error in submitting Instruction No. 8 to the jury because it did not specify a particular date or incident sufficient to ensure a unanimous verdict. Phillips failed to object to the instruction at trial and, thus, requests plain error review under Rule 30.20.

"In deciding whether or not to grant plain error review, this Court must first examine whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." *State v. Shaffer*, 251 S.W.3d 356, 358 (Mo. App. 2008). "If this Court finds that substantial grounds exist, then we should review the claim to determine whether manifest injustice or a miscarriage of justice has actually

10

occurred." *Id.* To find manifest injustice for instructional errors, the error must have affected the verdict. *State v. Escobar,* 523 S.W.3d 545, 551 (Mo. App. 2017).

Phillips contends that Instruction No. 8 was inappropriately submitted because it instructed the jury to find her guilty of stealing under Count II if it found that she satisfied the elements for stealing "between February 1, 2017, and July 1, 2017." The State presented evidence at trial that, on multiple occasions, Phillips stole the monthly rent paid by Ron Strader and Josh Elliott, two Chatsworth tenants. The State intended that these various incidents of stealing aggregate to the single charge in Count II. Phillips argues, however, that because the testimony of Strader and Elliott, along with Property Boss reports, document multiple instances of stealing within Instruction No. 8's timeframe, the jury members could have each convicted her on Count II for completely separate incidents of theft. We disagree.

The Missouri Constitution "requires that a jury verdict in a criminal case be unanimous." *Escobar,* 523 S.W.3d at 549 (Mo. App. 2017) (citing State v. Celis-Garcia, 344 S.W.3d 150, 155 (Mo. banc 2011)). "For a jury verdict to be unanimous, the jurors must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." *Celis–Garcia*, 344 S.W.3d at 155 (internal quotation omitted). "The jury unanimity issue arises in multiple acts cases." *State v. Powell*, 581 S.W.3d 103, 106 (Mo. App. 2019) (citing *Celis-Garcia*, 344 S.W.3d at 155) (internal quotation marks omitted). "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could

11

serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56.

We do not find substantial reason to believe a manifest injustice occurred because this is not a multiple acts case. The State sought to aggregate Phillips's separate instances of theft as allowed by section 570.030.10 and 11, which read:

> 10. The appropriation of any property or services of a type listed in subsection 2, 3, 5, or 6 of this section or of a value of seven hundred fifty dollars or more may be considered a separate felony and may be charged in separate counts.

> 11. The value of property or services appropriated pursuant to one scheme or course of conduct, whether from the same or several owners and whether at the same or different times, *constitutes a single criminal episode* and may be aggregated in determining the grade of the offense, except as set forth in subsection 10 of this section.

Thereunder, the State had the discretion to charge Phillips with a felony for the single instance of theft over $750 in Count I, and also to decide whether to charge Phillips with multiple misdemeanors for each of the remaining instances of theft, or to aggregate the remaining thefts into a single felony, which it chose to do. The Eastern District of this Court has approved of a similar charging configuration so long as the State aggregates the separate, misdemeanor thefts into no more than a single felony. *See State v. Snider*, 869 S.W.2d 188, 196-199 (Mo. App. 1993).

Key to our unanimity analysis is that a felony charge aggregated under §570.030.11 "constitutes a single criminal episode" and is treated as a single scheme or course of conduct. § 570.030.11. By the plain language of the statute,

12

the fact that the thefts occurred at separate times and from separate owners does not alter the analysis. *Id.* The result of applying § 570.030.11 is that Phillips's separate instances of stealing within Instruction No. 8's timeframe are no longer "multiple, distinct criminal acts" which could each "serve the basis for a criminal charge;" rather, they make up a single, continuing criminal act for the jury's consideration. As a result, the jury did not consider multiple acts, and did not need to unanimously find that separate instances of theft did or did not occur to render a unanimous verdict, as Phillips contends.[3] Instead, to issue a unanimous verdict, the jury needed only to find that Phillips partook in a single criminal episode—which properly encompassed acts of stealing from Strader, Elliott, and others evidenced in the Property Boss reports—and which occurred within Instruction No. 8's timeframe and amounted to the theft of more than $750 in total. Consequently, this is not a multiple acts case, and we do not find substantial grounds to believe that a manifest injustice occurred. Phillips is not entitled to plain error relief. We deny Point III.

### CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

---

[3] Phillips's argument relies primarily on the holdings in *State v. Celis-Garcia*, 344 S.W.3d 150, 158 (Mo. banc 2011) and *State v. Powell*, 581 S.W.3d 103, 108-09 (Mo. App. 2019). Neither case involved statutes similar to § 570.030.11, where multiple incidences of criminal conduct may be aggregated into a single criminal episode, so neither is dispositive to the issue before us.